## THE STATE v. HOPPER, *Appellant*.

1. **The Indictment** in this case is in one count, not two.

2. **Change of Venue**: SUBPŒNA. From the time that a change of venue is ordered, the court to which the case is sent, has jurisdiction, and the clerk of that court alone can issue a subpœna for witnesses.

3. **Practice, Criminal**: ATTACHMENT OF WITNESSES. If the fact that a witness not duly subpœnaed, has been recognized to appear, is not shown by the record and is not otherwise made known to the trial court at the time an application is made for an attachment against him, the judgment will not be reversed for refusal to order the attachment; especially, where after the attachment is refused the defendant reads as the testimony of the absent witness what he states in an affidavit then made for a continuance the witness would testify to if present.

4. ———: WITNESSES. It is a salutary practice, especially in criminal cases, to prohibit witnesses from communicating, during the trial, either with each other or with third persons concerning the case.

5. ———: HARMLESS ERROR IN ADMITTING EVIDENCE. Where evidence prejudicial to one of the defendants in a criminal cause is erroneously admitted, but that one is acquitted, the other cannot make that error ground for reversal of a judgment against him.

6. ———: WITHDRAWING EVIDENCE BY INSTRUCTION. When evidence has been erroneously admitted in a criminal case, an instruction to the jury to disregard it, will not cure the error if the evidence is of a character to prejudice the defendant's case; but it will suffice where it is apparent that it did not or was not calculated to have that effect.

7. ———: MURDER. A homicide committed in the attempt to perpetrate robbery, is not necessarily murder in the first degree. (*State v. Earnest*, 70 Mo. 520.)

8. **Harmless Error in Instruction.** If proper instructions are given in a criminal case, the judgment will not be reversed for the giving of others which are erroneous, if they are harmless.

9. **Instruction as to Admissions.** Whether defendant has made any admissions or not, it is not error to give the jury a general in-

struction that if they find he has made statements or admissions against his interest, such statements or admissions are evidence against him. It would be different if the instruction contained the substance of a specific admission or statement.

10. **Instructions in Murder Cases**: CONSTITUTIONAL LAW: INDEPENDENCE OF THE JUDICIARY. Section 1234 of the Revised Statutes of 1879, is not to be understood as requiring the trial courts, in murder cases, to instruct the jury as to murder in the second degree whether there is evidence to which the instruction could apply or not. If such were its meaning, it would be an invasion of the province of the judiciary. The legislature cannot prescribe what instructions the courts shall give, unless they have previously embodied into a legislative enactment, as the law of the land, the substance of such instructions.

11. **Practice**: JURY. The fact that the jury deliberated on their verdict in a room in which was a set of Missouri reports, and that the bailiff in charge of them remained in the same room, will not vitiate a verdict if there was no improper conduct on the part either of the jurors or the bailiff.

12. **Prosecuting Attorney**. The objections to a remark made by the prosecuting attorney in this case, *Held*, frivolous.

*Appeal from Dade Circuit Court.*—HON. JNO. D. PARKINSON, Judge.

AFFIRMED.

*J. B. Upton* for appellant.

*J. L. Smith*, Attorney-General, for the State.

HENRY, J.—Defendant jointly with one Earnest and Robertson, was indicted in the Cedar circuit court for the murder of Samuel C. Ham. At the October term, 1879, of the circuit court of Dade county, to which the cause, as to Hopper and Robertson, was removed on change of venue, there was a trial, which resulted in the acquittal of Robertson, and the conviction of Hopper of murder of the first degree. From the judgment against him he has appealed to this court.

The motion to quash the indictment was overruled, and this is assigned as error. It charges in appropriate

1. THE INDICTMENT. language and with the requisite particularity, that Earnest murdered Ham, and then concludes as follows: "And the jurors aforesaid, upon their oaths aforesaid, do further present that James Robertson and J. B. Hopper, then and there feloniously, willfully, deliberately, premeditatedly, and of their malice aforethought, were present helping, abetting, assisting, comforting and maintaining the said S. T. Earnest in the felony and murder aforesaid, in manner and form aforesaid to do and commit, and the jurors aforesaid do say that the said S. T. Earnest, James Robertson and J. B. Hopper, him the said Samuel C. Ham then and there in manner and form aforesaid, feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, did kill and murder, against the peace and dignity of the State of Missouri." Defendant's counsel contend that the indictment contains two counts, and that the first fails to conclude "against the peace and dignity of the State," while the second, which alone connects Hopper and Robertson with the killing, fails to charge the time, place and manner of killing. It is, however, but one count alleging in the first place, with all the particularity and formality requisite, that Earnest murdered Ham, and then charging that the other defendants were present aiding and abetting him. The motion to quash was properly overruled.

Nor was there any error in refusing to order an attachment against Eliza Bradshaw, a witness for defendant. 2. CHANGE OF VENUE: subpœna. The only cause alleged for an attachment was that she had been served with a subpœna issued by the clerk of the circuit court of Cedar county, after a change of venue was awarded to Dade county. The order changing the venue conferred jurisdiction of the cause upon the Dade circuit court, and it was from that time pending in that court. *Henderson v. Henderson*, 55 Mo. 535. The subpœna was, therefore, a nullity. On producing the order changing the venue, the clerk of the

Dade circuit court could have issued a subpœna in the cause.

On a motion for a new trial, affidavits were read for the purpose of showing that at the October term of the 3. PRACTICE, CRIMI- Dade circuit court, Mrs. Bradshaw was rec-
NAL: attachment
of witnesses.    ognized to appear as a witness for defendant at the January adjourned term; and if that fact, which did not appear of record, had been alleged and established, as a ground for the attachment when it was asked, it would have been error to refuse it. It was not, however, relied upon, but after the attachment was refused defendant read as the testimony of Mrs. Bradshaw what he stated on his affidavit then made for a continuance, she would testify to if present.

At the commencement of the trial the witnesses were "put under the rule," and directed to converse with no 4. ——: witness- one concerning the case, and to disclose no
es.    facts within their knowledge except to attorneys on the side for which they had been respectively subpœnaed. Of this defendant complains, but we see no objection to it. The object was to prevent the witnesses from informing each other what their testimony had been, or would be, and this would be frustrated if they were permitted to tell it to other persons who could communicate it to the witnesses. It is a salutary practice, especially in criminal cases, and intended to prevent collusion and concert among witnesses to harmonize their testimony.

Defendant also complains that Mrs. Ham was allowed to testify to a conversation between the three men and her grand-children, when, from her own story, it appeared that she was then at the cane-mill, some distance away, and did not pretend to hear the conversation. There is no foundation in fact for this complaint. Mrs. Ham stated that she and Mr. Ham "started down to the molasses-mill to get some wood. Just then three men rode up and met the children at the gate," when the conversation alluded to occurred. They were not at the mill, but had started to go

there, and just then the men came up to the gate. She testifies as if she heard the conversation, and the contrary does not appear.

Nor should the judgment be reversed on account of the admission of the testimony of J. B. Smith, that he heard that Ham had talked of buying Duke's farm, and that Lucy Ann Smith, with whom Duke was living, was a sister of defendant Robertson. Robertson, the brother, seemed not to have been injured by it, as he was acquitted.

5. ——: harmless error in admitting evidence.

Moreover, the jury were instructed to disregard it in their deliberations; and while this would not cure the error of admitting evidence improperly, which was of a character to prejudice the defendant's cause; yet it suffices when it is evident that the testimony did not, or was not of a character to prejudice the party against whom it was admitted.

6. ——: withdrawing evidence by instruction.

Nor was there error in overruling the motion to discharge Robertson.

With regard to the second, third, fourth and eleventh instructions, declaring a homicide committed in the attempt to perpetrate a robbery, murder in the first degree, we have only to reiterate what was said on that subject in the *Earnest case*, 70 Mo. 520. See also Wharton on Homicide, §§ 184, 185, 186, 187. The statute does not declare that every killing in the perpetration, or attempt to perpetrate a rape, robbery, &c., shall be murder, but that "any murder which shall be committed * * in the perpetration of, or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree." It is not a definition, but a classification of the offense. Those homicides which are made murder in the first degree by our statute, are only such as were murder at common law, and are only mentioned in section 1232 for the purpose of classification, not of definition. The statute of New York differs from ours in that it makes the killing of a human being " when perpetrated

7. ——: murder.

The State v. Hopper.

without a design to effect death, by a person engaged in the commission of any felony," murder in the second degree. That is both a definition and a classification of the crime. Adjudications under that statute are, therefore, not applicable to cases arising under ours.

The instructions were erroneous, but harmless, for if Ham was killed as alleged, the men who killed him were 8. HARMLESS ERROR IN INSTRUCTIONS. guilty of murder, without reference to an attempted robbery. He was not killed by accident, but aside from any purpose to rob, the killing was deliberate, willful and premeditated. Proper instructions as to murder, without reference to the attempted robbery, were given by the court.

The criticism by defendant's counsel of the tenth, thirteenth, fourteenth, fifteenth and sixteenth instructions given for the State, is without merit.

The twelfth instruction, to the effect that if the jury found that any admissions or statements were made by either 9. INSTRUCTION TO ADMISSIONS. of defendants against his interest, such statements or admissions were evidence against him, could not possibly have injured the defendant. If none were proved, then the jury could not possibly have found that there were any. If any were proved, the instruction was proper. If the instruction had contained the substance of a specific admission or statement, it would be different.

The sixth and seventh instructions, asked by defendant and refused, were substantially given in the ninth for the State, and were, therefore, properly refused.

It is also urged as a ground for reversal, that the court failed to instruct the jury with regard to murder of the 10. INSTRUCTIONS IN MURDER CASES: constitutional law: independence of the judiciary. second degree, and contended that section 1234, of the Revised Statutes, a new section, requires it in all trials for murder. It provides that: " *Upon the trial of an indictment for murder in the first degree, the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether the defendant*

*be guilty of murder of the first or second degree;* and persons convicted of murder in the first degree shall suffer death; those convicted of murder in the second degree shall be punished by imprisonment in the penitentiary not less than ten years." This seems to be but an affirmance of what the law has been in this State for a half century. Sections 1232 and 1233, in the Revised Statutes of 1879, are identical with sections 1 and 2, page 446, of Wagner's Statutes, except that the words " or other felony," in section 1, are omitted from section 1232. Section 1234, of the Revised Statutes, differs from section 3 of Wagner's Statutes, in the addition of the words above italicized. It has always been held to be the duty of the court, in trials for murder, if the evidence would warrant it, to instruct the jury as to murder in the second degree, and if the above section was meant to require such an instruction to be given, without regard to the evidence, we do not hesitate to say that it is such an invasion of the province of the judiciary as cannot be tolerated without a surrender of its independence under the constitution. The legislature can pass any constitutional law it may deem proper, and the courts are bound to observe it, but it cannot prescribe for them what instructions they shall give in a cause, unless they have previously embodied into a legislative enactment as the law of the land the substance of such instructions. We hold, therefore, that in any view to be taken of section 1234, the trial courts cannot, in a trial for murder, give an instruction in regard to murder in the second degree, unless there is evidence which would warrant the jury in finding the accused guilty of murder in that degree.

Section 1654 provides that, " any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him guilty of a higher degree of homicide." If a person be indicted for murder, and under the instructions of the court the jury find him guilty of a lower degree of homicide, he

shall be punished according to the verdict, although the appellate court may determine that the evidence proved only the higher degree of homicide. That such is now the law, seems to be an additional reason why the trial court should confine its instructions to the case made by the evidence. The distinction between murder in the first and second degree has not been abolished, and is as clear a distinction, under our decisions, as that between murder and manslaughter, and while it is competent for the legislature to provide that if a jury find the accused guilty of murder of the second degree when the evidence proves him guilty of murder of the first degree, he shall, nevertheless, suffer the punishment prescribed for that crime, we do not think it within the province of the legislature to require the courts to instruct the jury as to any crime, except such as the evidence warrants.

This court has held that if one be found guilty of the second degree of murder, it is an acquittal of the higher degree, and although the judgment be reversed, on his appeal, he cannot again be put upon his trial for murder of the first degree. The legislature, if it see proper, can enact otherwise, and thus accomplish what was probably intended by the amendment to sections 1 and 3. If the evidence against the accused prove only murder of the first degree, and he be convicted of the second degree, and the judgment be reversed because instructions were given in relation to murder of the second degree, it virtually amounts to his acquittal of murder of either degree, because when again put upon his trial, if the evidence be the same, he cannot be convicted of murder of the first degree because acquitted of that crime by the former verdict, nor of murder of the second degree because the evidence would not warrant instructions on that degree of murder.

The defendant complains that "the jury were allowed to deliberate upon their verdict in the court room in which II. PRACTICE: jury. was a set of the Missouri reports, and the usual paraphernalia of a court room." "That the bailiff

in charge of the jury was also allowed to remain in the same room." No improper conduct on the part of the jury or the bailiff is alleged. · The latter was instructed by the court to remain in a part of the room remote from that in which the jury deliberated, and it is not alleged that he disobeyed the order, or in any manner whatever participated in the deliberations of the jury, or held any communication with them.

The objections to the remarks of the prosecuting attorney are frivolous. On one occasion, and but one, when 12. PROSECUTING ATTORNEY. a witness answered an inquiry, the attorney remarked to his associate, who was taking notes of the testimony, "put that down," and this is seriously urged as a ground for a reversal of the judgment. If for such a reason it should be reversed, there would never be an affirmance of a judgment in a civil or criminal cause. The attorney for the State had the right to take notes of the testimony, and one had a perfect right to tell his associate to make a note of any evidence which he deemed important. The manner of the attorney prosecuting for the State is a matter for the cognizance of the trial court. We are not here to review his conduct unless he mistate law or facts in his address to the jury, or take some undue advantage of the accused.

The evidence in this cause against Hopper was substantially the same as was introduced in that against Seth Earnest The only question was in regard to the identification of the accused parties with those who committed the murder. No question whatever that it was a coldblooded, brutal, dastardly murder, and the jury having found that defendant was one of the three who committed it, and no material error having occurred in the progress of the trial, the judgment is affirmed. All concur.

SHERWOOD, C. J., AND NORTON, J.—We concur in affirming the judgment, but we do not concur in the remarks in

28—71

the foregoing opinion in reference to the instructions concerning robbery.