The State v. Hopkirk.

## The State v. Hopkirk, *Appellant.*

1. **Criminal Practice:** JURORS, COMPETENCY OF. An opinion formed from minor talk in the neighborhood of the crime and from newspaper reports does not render one incompetent to be accepted on the panel of jurors from which the defendant is to make his challenges in a criminal case.

2. ———: ———: EXCEPTIONS. A defendant must save his exceptions to the action of the trial court in accepting a person on the panel of jurors from which he is to make his challenges, or he will not be heard to complain on appeal.

3. ———: CONFESSIONS: REVERSIBLE ERROR. The preliminary question of the admissibility of a confession of the accused, is one for the trial court, and unless it is clear that manifest error has been committed by such court in admitting the confession, its admission will not be considered reversible error.

4. **Confessions, When Inadmissible.** It is only where a confession is extorted through exciting the hopes of the accused by promises or practicing on his fears by threats, that it is inadmissible.

5. **Confessions, Admissibility Of.** Where it is apparent there is no connection between the confession and the promise or threat, or where the confession was obtained by a trick, artifice, or the use of intoxicating liquor, it is still admissible in evidence.

6. ———. A confession made under the influence of the promise of some collateral boon or benefit is admissible, where no hope or fear is induced in respect to the particular criminal charge.

7. ———. EVIDENCE. The testimony of a witness as to such confession is admissible who cannot remember it in detail, but is able to relate its important points.

8. **Murder in Perpetration of a Felony**: STATUTE. Under Revised Statutes, section 1232, killing one while the slayer is engaged in the perpetration of a felony, is murder in the first degree. *State v. Ernest*, 70 Mo. 520, and *State v. Hopper*, 71 Mo. 425, disapproved.

9. **Evidence**: IDENTITY OF PERSON OR THING: OPINION OF WITNESS. The opinion or belief of witnesses as to the identity of persons or things, when such opinion or belief rests upon facts within the witness' own knowledge, is competent evidence, although the witness will not testify positively to such identity.

10. **Certain Remarks** of special counsel for the state held unobjectionable.

*Appeal from Henry Circuit Court.*—HON. JAS. B. GANTT, Judge.

AFFIRMED.

*W. S. Shirk, Fyke & Calvird, Boone & Casey*, and *N. K. Chapman*, for appellant.

(1) The plea in abatement should have been sustained. R. S. secs. 1732, 1736, 1738, and 1742; *State v. Bailey*, decided by supreme court of Kansas, May, 1884. (2) The court erred in overruling defendant's application for change of venue. *Reed v. State*, 11 Mo. 379; *Corpenny v. Sedalia*, 57 Mo. 88. (3) The court erred in permitting the panel of forty to separate and go to their homes pending the challenges. (4) The court erred in admitting the confession of defendant testified to by the witnesses Cason and Bartlett. *Hestex v. State*, 2 Mo. 166; *State v. Brockman*, 46 Mo. 566; *Com. v. Taylor*, 5 Cush. 605; *Miller v. State*, 40 Ala. 54; *Jordan v. State*, 32 Miss. 382; *State v. Patterson*, 73 Mo. 695. (5) The court erred in admitting the testimony of Hormeyer, for the reason that the former statements of defendant were not voluntarily made, and the presumption arose that all subsequent statements were involuntary until shown by the state to be otherwise. *State v. Jones*, 54 Mo. 478; *Love v. State*, 22 Ark. 336; *Bob v. State*, 32 Ala. 560;

*Joe v. State*, 38 Ala. 422; *Porter v. State*, 55 Ala. 95; *People v. Jim Ti*, 32 Cal. 60; *State v. Chambers*, 39 Iowa 179; *Peter v. State*, 12 Miss. 31; *State v. Drake*, 82 N. C. 592. (6) The court erred in admitting the testimony of the witness Oechsli as to defendant's statements in jail. Witness did not pretend to be able to detail the whole statement. The rule is, that unless the witness professes to be able to detail the substance of the whole confession, he will not be permitted to detail any portion of it. *People v. Gelabest*, 39 Cal. 663; *Berry v. Commonwealth*, 10 Bush (Ky.) 15; *Earp v. State*, 55 Ga. 136; *People v. Ward*, 15 Wend. 231. (7) The court erred in retaining Joseph White, Wm. Ogg, Frank Nash, P. N. Rice, John McGinnis, H. T. Burriss, L. C. Organ, Samuel B. McHenry, George Cook, and T. C. Hemphill on the panel of forty qualified jurors. Of these ten, four were on the jury that tried the case, to-wit: Wm. Ogg, P. N. Rice, L. C. Organ, and T. C. Hemphill. Defendant was entitled to a panel of forty jurors who had been found by the court to be qualified, etc. Sess. Acts 1881, p. 118; *State v. Culler*, 82 Mo. 623. (8) The court erred in admitting the testimony of Mrs. B. H. Wells as to the identity of the watch, and also in answer to the question, "who do you think it was?" (9) The court erred in giving instruction number three on the part of the state. Wilfulness, deliberation, premeditation, and malice aforethought must be proved as any other facts. It is not sufficient that the jury can satisfactorily and reasonably *infer* their existence. Nothing can be left to inference. (10) The court erred in giving instruction number eight, by which undue prominence is given to the alleged confessions and to the testimony of Cason, Bartlett, Oechsli, and Hormeyer. (11) The court erred in refusing defendant's instructions numbers two, four, nine and twelve.

*D. H. McIntyre*, Attorney General, for respondent.

(1) The court did not err in overruling the plea in

abatement. (2) Nor did it err in overruling the application for change of venue, as it was not supported by the affidavit of two or more reputable persons as required by the statute. R. S. sec. 1877. (3) The jurors were all properly accepted. None of them had read the evidence taken before the coroner or committing magistrate, or talked with any of the witnesses. *State v. Walton*, 74 Mo. 270. (4) It was competent for Mrs. Wells to testify that the watch resembled her husband's. *State v. Babb*, 76 Mo. 501. (5) When a murder by violence and malice aforethought is charged the prosecution may show, as part of the *res gestæ*, that it was also done in the perpetration or attempt to perpetrate arson, robbery, rape, or burglary, as the fact may be. Such evidence would be legitimate for the purpose of establishing the ingredients of the crime. *Mitchell v. State*, 1 Tex. App. 194; *Pharr v. State*, 7 Tex. App. 472; *Roach v. State*, 8 Tex. App. 478. (6) Offenders have often been recognized by the voice and size, and the evidence of Mrs. Wells on this point was competent. Wills' Cir. Ev., top pp. 113, 114; *King v. Brook*, 31 St. Trials 1137; Whar. Cr. Ev., § 803 (8 Ed.); *Com. v. Scott*, 123 Mass. 234; *Brown v. Com.*, 76 Pa. St. 316. (7) Putting witnesses under the rule is a matter of discretion with the trial court, and this court will not reverse a judgment because a witness is allowed to testify who has not been excluded from the court room. *State v. Fitzsimmons*, 30 Mo. 236; *State v. Hughes*, 71 Mo. 633. (8) The evidence of the confession of defendant was properly admitted. *State v. Patterson*, 73 Mo. 695; *Kelsoe v. State*, 47 Ala. 599. (9) The instructions given for the state were correct. *State v. Ellis*, 74 Mo. 207; *State v. Talbott*, 73 Mo. 347; *State v. Wingo*, 66 Mo. 181. (10) Defendant's third instruction was properly refused. The evidence is uncontradicted that the killing was done in the perpetration of a robbery and was, therefore, murder in the first degree. R. S., sec. 1232. At common law any homicide committed in the prosecution of a felon-

.ious intent was murder.    " A shooteth at the poultry of B and by accident killeth a man; if his intention was to steal the poultry, which must be collected from circumstances, it will be murder, by reason of that felonious intent." Foster's Crown Law, 258, 259.    "If A come to rob B in his house or upon the highway, or otherwise, without any precedent intention of killing him, yet, if in the attempt, either without or upon the resistance of B, A kills B, this is murder." 1 Hale's P. C., top p. 465. A homicide committed in the prosecution of a felonious intent, although the death ensued contrary to the design of the party, will be murder. 1 East's P. C., p. 255. "And it is a general rule, that wherever a man intending to commit one felony, happens to commit another, he is as much guilty as if he had intended the felony which he actually commits." 1 Hawkins' P. C., chap. 29, § 11, p. 112.    "And if one intends to do another felony and undesignedly kills a man, this, also, is murder." 4 Blackstone Com. (Cooley) top p. 200.    A homicide committed in the prosecution of any felonious intent being, therefore, murder at common law, remains murder under our statute, and is as much murder in the first degree as to arson, rape, robbery, burglary, and mayhem as though the statute read every *homicide* instead of murder. Sec. 1232, R. S.    The statute has been so interpreted by this court. *State v. Jennings*, 18 Mo. 435; *State v. Green*, 66 Mo. 631.    If several persons combine to commit a felony and a homicide be committed by one of them, although it was separate from the original design, it will be murder in all.    *U. S. v. Ross*, 1 Gall. (U. S.) 624; *State v. Shelledy*, 8 Ia. 505; *People v. Vasquez*, 49 Cal. 560; Ib. 643; 1 East P. C. 259; Foster's C. L., p. 351. It is submitted that *State v. Ernest*, 70 Mo. 520, and *State v. Hopper*, 71 Mo. 425, holding a different doctrine, should be overruled. (12) The remarks of the special counsel for the state, assigned as error, were not improper. *State v. Emory*, 79 Mo. 461.

SHERWOOD, J.—The defendant, together with one

Thomas Brownfield, was indicted for the murder of one John E. Wells, in Henry county, on Friday, the 29th day of February, 1884. The murder was committed at night, its motive being robbery. A severance was had and each of the indicted parties was accorded a separate trial, resulting in the conviction and sentence of each. Many points common to both cases were passed upon in Brownfield's case, already decided, and consequently will not be further noticed.

I. In relation to admitting certain persons to form the panel of forty, from which the petit jury was chosen, it is enough to say that of that number those who were objected to at the time the panel was being formed and exceptions as to their being accepted saved, none of them had formed their opinions except from minor talk in the neighborhood and newspaper reports ; they, there fore, do not come within the rule laid down in *Culler's case*, 82 Mo. 623, and were competent to form the panel from which the jury was afterwards chosen. As to Hemphill, it is claimed he was a witness in Brownfield's case, and section 1896 of the statutes, is invoked, which provides that no witness in any criminal case shall be sworn as a juror therein, if challenged, etc. This section has no application to Hemphill. He was not a witness in the cause, knew nothing about it, and had only been summoned as a witness on Brownfield's application for a change of venue, but never sworn. As to Ogg, White, Nash, and Rice, no exceptions were saved as to their being placed on the panel. On this point, therefore, the ruling must be against the defendant.

II. The admissibility of the confessions will now be considered. In endeavoring to arrive at a correct con-clusion on this point, considerable embarrassment has been experienced in reading the evidence, in consequence of the very poor fashion in which this transcript has been made out; capitals and punctuation are for the most part ignored, and sentences are telescoped into other sen-tences in utter disregard of all ordinary rules. The pre-

liminary question of the admissibility of confessions, is one which belongs alone to the trial courts, and unless it be made plain that error manifest has been committed in this regard, in deciding the question of fact as to whether those confessions were made in circumstances which forbid their being received in evidence and going to the jury, the admission of such confessions cannot be held reversible error by this court. *State v. Patterson*, 73 Mo. 695. And the reason is obvious. It is just like the determination of any other preliminary question of fact by the court, as for instance, an application for a change of venue, where the testimony as to prejudice of the people is conflicting. In all such cases the court seeing and hearing the witnesses obviously has better means of judging on a question of fact than an appellate tribunal, where the witnesses are neither seen nor heard, and where their testimony is often bunglingly and imperfectly reported. *Fife v. Com.*, 29 Pa. St. 429. In passing upon the action of the trial court and in reversing its rulings in this particular, it must plainly be made to appear that the confession was induced by the flattery of hope or the torture of fear, that the inducement to the confession stood toward the confessor in the relation of cause to effect, that some promise or threat was made which eventuated in the confession, and prevented that confession from being what the authorities term "voluntary."

It is by no means necessary that the confession be spontaneous, otherwise no confession ever made would be receivable. It is only where the confession may be said to be extorted, dragged reluctantly from the breast of the prisoner, through exciting his hopes or practicing on his fears, by some promise or some threat, that the confession subsequently made is inadmissible, and a mere adjuration to speak the truth, no threats or promises being employed, or if it be apparent that there was no connection between the promise or threat and the confession, or that trick or artifice or intoxicating liquors were

used to induce a confession, the confession will not be rejected. *State v. Patterson, supra*; *State v. Phelps*, 74 Mo. 128; *Levison v. State*, 54 Ala. 520. In cases like the one at bar, the real question, as stated by Keating, J., is whether there has been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from fear of the threat or hope of profit from the promise. *R. v. Reason*, 12 Cox. C. C. 228; *R. v. Jones*, Ib. 241; 1 Wharton's Cr. Law, sec. 687.

After reading with attentive consideration the testimony in this cause the conclusion reached by the trial court as to the admissibility of the confession in the jail at Clinton, appears to be fully warranted. Among the reasons which may be presented favoring this conclusion are these: Nothing that occurred in the hotel in Windsor, in the nature of an admission or quasi-confession by the defendant, was allowed by the court to go to the jury, and even if it had been so allowed, there is such conflict in the testimony as to what actually occurred at that place as to leave it in doubt whether the admission of that quasi-confession of the defendant in evidence would have been reversible error. Besides all that, the testimony of two witnesses, the prosecuting attorney, Lewis, and John Barnett, establishes that defendant said, while in jail at Clinton, when speaking of the night at Windsor, that "he was not afraid of being mobbed, as he had been raised in that neighborhood and knew all the men." So that if it be conceded that undue influence was attempted to be exerted on defendant at Windsor, the testimony referred to shows that it failed to accomplish its purpose by exciting his fears. The only remaining question, then, is whether the occurrences on the carriage ride from the jail at Clinton, Monday afternoon, rendered the confession made that night inadmissible. It is true that trick and artifice were used and that liquor was used to the extent of making defendant drunk, and that questions were asked him with the hope of inducing a confession from him, but this was fruitless.

No threat or promise was made. It is true, also, that Cason, in response to a question by defendant of what good it would do him to tell, said : "The state might be easier on him." But this was no promise. It was at most but the expression of an opinion in response to defendant's question.

In *Fife v. Com.*, *supra*, the jailer in a conversation with a prisoner respecting herself and other prisoners, had said to her "that if the commonwealth would use any of them as a witness, I suppose it would prefer you to either of. the others," and she after that made a confession. It was held that there was nothing in this expression of the jailer which amounted to a promise, or which should cause the confession to be rejected. The case at bar differs in no essential particular from the one just cited on the point now under discussion. Nor can it be said that Cason's statement to defendant, if he could get out on bond he could drive a bus for him, be held to invalidate the confession subsequently made, for the law is that where a confession is made under the influence of some collateral benefit or boon, no hope or fear being held out in respect to the particular criminal charge, that then such confession, though made under the influence of such collateral inducement, is receivable. 1 Wharton Crim. Law, sec. 687. And the court restricted the state from offering in evidence only such portion of the confession of the defendant as was corroborated by other evidence in the case, and also called the attention of the jury to the point by an appropriate instruction. And there was abundant corroborative testimony in support of the confession—testimony perhaps sufficient in and of itself to warrant a conviction. If the first confession made in the jail to Bartlett and Cason was properly received, as being made without the influence of promise or threat, then the subsequent confession was properly received also. And as to the confession made to Oechsli, although he could not detail the minor matters, yet he did remember the important

points, and this was sufficient.   To require in all cases of
a confession that it should be rejected, if the witness
thereto could not remember all that was said, however
unimportant, would be, in many, if not in most, in-
stances to exclude the confession altogether.   *Kelsoe v.
State,* 47 Ala. 573.

III.   As to the instructions, they covered the law of
the case and left nothing to be desired.   So that any in-
structions refused on behalf of the defendant, were
properly refused, no matter how well drawn they were.
And there was no error in refusing to give the third in-
struction asked by defendant.   It declared, in substance,
that in order to sustain the charge made in the indict-
ment, that a wilful, deliberate, and premeditated killing,
with malice aforethought, must be proved, and that it
was not sufficient to prove that the killing of Wells was
done in the perpetration of a robbery.   Our statutes pro-
vide that a killing in such circumstances should be mur-
der in the first degree, as much so as when committed by
means of poison or lying in wait.    Section 1232.    The
phrase, "every murder," with which the section begins,
is only used as a means of classification of the crime of
murder; *i. e.*, the section makes no homicide murder
that was not murder at common law; and the next suc-
ceeding section fully supports this view by declaring that
"all other kinds of murder at common law, not herein,
etc., shall be deemed murder in the second degree."   To
say that a man may kill another in the attempt to rob
him, is not murder in the first degree, is to fly into the
face of the plainest statutory provisions.

The rule at common law was just as section 1232 sub-
stantially lays it down, "that a homicide committed in
the perpetration of a felony was murder, and this,
whether there was any precedent intention of doing the
homicidal act or not."    1 Hale's P. C., top p. 465; 1
East's P. C. 255; 1 Hawkins' P. C., chap. 29, sec. 11, p.
112; 4 Black. Com. (Cooley) 200.    So the statute has
been interpreted by this court.    *State v. Jennings,* 18

Mo. 435; *State v. Nueslein*, 25 Mo. 111; *State v. Green*, 66 Mo. 631; *State v. Swain*, 68 Mo. 605. And so the law has been declared in California, upon a statute substantially identical with our own. *People v. Vasquez*, 49 Cal. 560. So, too, in Delaware. *State v. Boice*, 1 Hous. Crim. Cas. 355; *State v. Jones*, Ib. 21. This subject has been exhaustively discussed by Norton, Judge, in the *Shock case*, 68 Mo. 552. A different view from that here expressed was held in *State v. Earnest*, 70 Mo. 520; and in *State v. Hopper*, 71 Mo. 425; but this was always done by a divided court. I think these cases should no longer be followed.

IV. There was no error in permitting Mrs. B. H. Wells to answer that she judged that the tall man, who came on the night of the murder, was the defendant. She formed this opinion from his voice and his motion. She had been acquainted with him from his earliest childhood. Transgressors of the law have frequently been recognized by their voice and size. Wills on Cir. Evid. 113; *King v. Brook*, 31 St. Tr. 1137; Whar. Crim. Evid., sec. 803; *Com. v. Scott*, 123 Mass. 234; *Brown v. Com.*, 76 Pa. St. 319. Opinion or belief on questions of identity of persons or of things, when such opinion or belief rests upon facts within the witness' own knowledge, is competent evidence, although the witness will not swear positively to identity of the person or thing. *State v. Babb*, 76 Mo. 501. These remarks will also apply to the silver watch of Wells, taken at the time of the robbery. Mrs. J. E. Wells' statement that "it looked like her husband's watch," was competent to go to the jury.

V. The remarks of the special counsel for the state were not objectionable. The defendant had claimed when arrested that if taken to Windsor he could telegraph to Burdin, Kas., and prove that he was at a dance in that vicinity on the night of February 28, but when brought to Windsor he made no effort nor expressed a desire to have a telegram sent. This circumstance, dam-

aging as it was to the defendant, was a fit subject for comment by the state, and for inference by the jury. *State v. Emory*, 79 Mo. 461.

Finding no error in the record the judgment should be affirmed and the law take its course.    Norton and Black, JJ., concur; Ray, J., in the result.

RAY, J., CONCURRING.—In this case I concur in the result.    In the perpetration or attempt to perpetrate a robbery, wilfulness, deliberation, and premeditation are necessarily implied, both at common law and under the statute; and where, as in this case, the killing is that of the person robbed, or attempted to be robbed, the offence is necessarily murder in the first degree; but whether there may or may not be a killing, collateral to the robbery, that is, of some person, other than the party robbed, or attempted to be robbed, is not now before us, and I see no necessity in this case, to pass upon that question or the effect thereof, and, therefore, express no opinion upon it.

HENRY, C. J., DISSENTING.—Concurring in the affirmance of the judgment, I dissent from that portion of the opinion of the court expressly overruling the cases of the *State v. Hopper*, 71 Mo. 425, and *State v. Earnest*, 70 Mo. 520, and in effect overruling *State v. Wagner*, 78 Mo. 644.    Every member of this court concurred in that opinion delivered in that case by Hough, C. J.    Those cases are amply sustained by the weight of authority and I cannot better express my views than by adopting section 184 of Wharton on Homicide.    In that section, that ablest of American writers on criminal law, says:    "It has sometimes been said that a homicide in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary is, under the Pennsylvania and cognate statutes, murder in the first degree.    But it must be remembered that the statutes under criticism do not say that '*homicide*,' when so committed, shall be murder in the first degree.    *   *   *    Nothing, there-

fore, that is not murder at common law can be murder either in the first or second degree; and we have first to enquire, therefore, in determining the grade of any particular homicide under the statutes, whether it is murder at common law. We may take, for instance, a homicide committed in the perpetration of arson. Is such a homicide murder at common law? If it is, it is murder in the first degree, under the statutes before us. If it is only manslaughter at common law, then it is manslaughter under the statutes before us. Now, is such a homicide necessarily murder at common law? No doubt if a person sets fire to a dwelling house under such circumstances that its inmates, as an ordinary sequence of the fire, are burned and die, then such malice is to be inferred as will make the case murder at common law. The defendant, we may be bound, as a presumption of fact, to infer, knew the house was a dwelling house, and knew, supposing the fire to be communicated to it, that some one of its inmates would, in the ordinary course of events, be injured by the fire. The case would be that of a reckless and malicious firing into a crowd, which is murder at common law, if death ensued. But suppose that when perpetrating the arson the defendant, in accidentally discharging a gun, killed some one either in the house or in its neighborhood. Now, though we have several high authorities to the effect that this is murder at common law, the sounder view, as we have already seen, is that in such case the defendant should be tried for arson in firing the building, and for manslaughter in the unlawful killing (without malice aforethought) of the deceased; since the malice aforethought necessary to constitute murder cannot be inferred, in face of the fact that the killing was in no way within the scope of the defendant's plan, from the mere fact of the arson. If this reasoning be correct the defendant cannot, on the indictment for killing, be convicted of murder in the first degree, but must be convicted of manslaughter; and is liable to conviction on a separate indictment for arson. "

Our statutes declare that: "Every murder which shall be committed * * * in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree." Sec. 1232. This is just the kind of statutes Mr. Wharton had under consideration in the section above quoted. It is almost identical with that of the states of Pennsylvania and Connecticut. It clearly recognizes the distinction drawn by Mr. Wharton. If the legislature meant that every homicide committed in the perpetration or attempt to commit either of the specified felonies, should be murder in the first degree, was it not as easy to write "homicide," as "murder?" Is it now, or was it ever the law, that every homicide committed *while* one was engaged in the perpetration of another crime, and not in furtherance of that other crime, is murder? If a burglar, attempting to break into a house, accidentally lets a pistol fall from his pocket, which is discharged and kills a man on the opposite side of the street, is it now, or was it murder at common law? There is no connection, in such case, between the burglary and the homicide. The latter was no more within the scope of the burglar's plan, than would a similar accidental killing be, in that of a person carrying a concealed pistol in violation of law. If one, in the attempt to commit a burglary, should meet with resistance, be assaulted, struck, and should instantly kill the assailant, although there was no deliberation on the part of the burglar, no previous design to kill, no purpose then to kill, yet the homicide would be murder, because committed in the perpetration of burglary, and murder in the first degree, because so classified by the statute. The homicide in such case is murder, without the elements of malice, deliberation, and premeditation.

Mr. Wharton says, in section 56 of his work on Homicide, that: "There is reported no modern conviction of common law murder, in a case in which there was no evidence of a malicious intent towards the deceased, and

in which the felonious intent proved, was simply an intent to commit a collateral felony." Blackburn, J., in his testimony in 1874 before the Homicidal Amendment Committee, said : "Where a man is committing a crime, and, in the course of committing that crime commits violence against anyone, resulting in his death, then I apprehend, as the law stands, it is murder, even though the violence should be such that if it had not been inflicted during the commission of a crime, it would have been only manslaughter." He states an instance to illustrate his view : "A poor girl was returning home from church, and had to pass over a stile between two hedges, and a ruffian, who had lain in wait, threw a shawl over her head and dragged her along some distance, intending to carry her to a wood and ravish her. She died before she got there." The man was hanged for murder. He had intentionally done violence to his victim, *in furtherance of his purpose* to ravish her. He did not mean to kill her, yet he was guilty of murder. As in the case supposed of a burglar who at the instant, without any intent to kill, formed when the burglary was conceived, or attempted, shoots or stabs to death one who resists him, under circumstances which would constitute the killing manslaughter, but for the attempted burglary, yet it is murder because the violence to the resistant was committed in the perpetration of a burglary. "A person," said Blackburn, J., "who intentionally uses personal violence either in the case of a highway robbery, or to silence a person giving an alarm of burglary, is guilty of murder." He may not have intended to kill the alarmist in the latter case, but only to silence him ; but if the means used for that purpose produce his death, the burglar is guilty of murder.

The statute of New York makes : "The killing of a human being, when perpetrated without a design to effect death by a person engaged in the commission of any felony," murder in the first degree. The difference between that and our statute is so wide that adjudica-

tions under that statute, are inapplicable to ours, which is almost identical with those of Pennsylvania and Connecticut, where the construction given it in the *Earnest* and *Hopper cases* prevails. *Lane v. Com.*, 59 Pa. St. 374; *Rhodes v. Com.*, 12 Wright 396; *State v. Dowd*, 19 Conn. 388. The cases of *State v. Earnest* and *State v. Hopper* are misunderstood. It was not decided in either, that if one, in order to commit a robbery, kills the person he would rob, he is not guilty of murder in the first degree. The trial court in those cases declared that a homicide committed in the attempt to perpetrate a robbery was, as a matter of law, murder in the first degree. Although the judgment in the *Earnest case* was reversed, it was not for that error, and the judgment against Hopper was affirmed, although a similar instruction to that given in the *Earnest case* was also given against him. We merely condemned it as an erroneous abstract proposition of law, of no consequence in those cases, but might be, in supposable cases. The legislature knew what it was doing when in section 1232, it used the word "murder," instead of the broader and more comprehensive term "homicide;" and it would be a judicial legislation, I think, for this court to substitute the latter for the former term in reading the statute, and the evil consequences of such an interpretation of the statute will, ere long, be made manifest.