STATE of Missouri, Respondent,

v.

Phillip A. ROYAL, Appellant.

No. 61681.

Supreme Court of Missouri,
En Banc.

Jan. 13, 1981.

Rehearing Denied Feb. 9, 1981.

Terry Daley, Public Defender, John D. Wiggins, Asst. Public Defender, Rolla, for appellant.

John Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellant was charged by information with capital murder, kidnapping, first degree robbery, stealing a motor vehicle and armed criminal action in connection with the robbery of the Neelyville Branch of the Bank of Poplar Bluff and the abduction and

murder of an employee, Tara Lynn Creach. He was convicted of capital murder and sentenced by the jury to life imprisonment without possibility of probation or parole for fifty years. Appeal was made directly to this Court under Art. V, § 3, Mo.Const.

As there is no challenge to the sufficiency of the evidence to support the conviction, only a brief recitation of the facts is required. On the morning of January 13, 1978, the Neelyville Branch was robbed of approximately $33,000 and the employee-teller at that facility was abducted. Witnesses testified that they saw the victim's car containing two passengers, one of whom was the victim, departing from the bank. The description of the car was transmitted to police officers and shortly after receiving the dispatch, Officer Stanley Martin met the victim's car and gave chase. After a high speed chase on icy roads, the car was wrecked. Officer Martin pulled appellant from the car and placed him under arrest. A canvas bag containing a large amount of currency, including some "bait money" was recovered. Appellant was placed in Officer Martin's car and Deputy Larry Woods read the *Miranda* warnings to him, whereupon he was questioned about the victim's whereabouts. At this time, or shortly thereafter at the Sheriff's office, appellant made statements leading the police to a remote area of Butler County known as Panhandler's Park where Tara Lynn Creach's body was found. She had been shot three times with a .22 caliber weapon.

In his first of four points of error, appellant claims that the trial court erred in overruling his motion to suppress statements allegedly taken in violation of his fifth amendment rights. He testified at the suppression hearing that he twice asked to be provided legal counsel; that he was told that counsel would be appointed for his arraignment; and, that the police did not cease the interrogations that resulted in his making the statements he sought to suppress.

█ Appellant contends that the conduct of interrogating officers violated his rights as enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* states that if in-custody interrogation continues after a defendant has invoked his right to remain silent and to legal assistance, the burden falls upon the State to prove that he knowingly and intelligently waived those rights. *Id.* at 475, 86 S.Ct. at 1628; *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. banc 1979); *State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978). It is clear that the invocation of those rights does not prevent police officers from resuming interrogations as long as a *defendant's right to cut off questioning is scrupulously honored. Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *State v. Blevins*, 581 S.W.2d 449 (Mo.App.1979).

█ In this case, appellant timely filed his motion to suppress statements detailing certain elements of the crimes charged. The motion was based upon his allegation that he twice requested legal assistance which was not immediately forthcoming. At the conclusion of the suppression hearing, the trial court entered its order suppressing all statements made prior to the giving of *Miranda* warnings, but did not specifically articulate the reasons for overruling appellant's motion to suppress statements made while incarcerated. Implicit in the trial court's silence and admission of the statements at trial is the conclusion that appellant's testimony regarding the alleged requests for an attorney lacked credibility and that the statements were voluntarily given. While disposing of such a motion in this manner is not as clear as making definitive findings based on the evidence adduced at the suppression hearing, there is nothing inherently improper in so doing.

At first blush, this conclusion might appear to be in conflict with language found in *State v. Olds, supra*, at 751, wherein we said:

... in the absence of the trial court's finding that it disbelieved defendant's testimony regarding requests for an attorney and to remain silent, we cannot find that the record supports the finding that the waiver and subsequent statements were voluntary.

This language might be understood to require a trial court to include in its ruling on motions to suppress its evaluation of the credibility of individual witnesses. While such statements may be desirable, a careful reading of *Olds* reveals that specific findings were particularly crucial *under the facts contained in the record of that case.*

In *Olds*, the defendant testified at the suppression hearing that he had asked for an attorney but was told hat he would have to wait until questioning was completed. *Despite being given two opportunities, the State made no effort to directly refute defendant's testimony.* In the absence of any contradictory evidence and because the trial court failed to make it very clear that defendant was not believable, we could not find its conclusion that the statements were voluntary sufficiently supported by the record.

 It is precisely on this point that *Olds* is distinguishable from the case at bar. Appellant testified that he made two separate requests for legal assistance; the first being made as he was being transported to the Coroner's Inquest, and the second coming later that day while he was being taken to Panhandler's Park. He alleged that the interrogations did not cease and his will was finally overborn. In direct contrast to *Olds*, the allegedly offending officers took the stand and testified that prior to each interrogation, appellant was read his rights, and that at no time, including the instances about which he complains, did appellant request legal assistance. Indeed, if these officers are believed, appellant asked to speak to them.

As we said in *State v. Alewine*, 474 S.W.2d 848, 852 (Mo.1971):

The question before the trial court at the conclusion of the hearing on the motion to suppress and again during the trial on defendant's objections to the testimony of oral confession was whether the alleged statement was voluntarily given and therefore, admissible in evidence. The question on appeal is whether the evidence was sufficient to sustain the trial court's finding that the state-ment was voluntarily given. (citations omitted).

Where there is conflicting evidence on the voluntariness of a statement, as there is here, the admissibility of a confession by a trial court is a matter of discretion which is not lightly disturbed. *State v. Flowers*, 592 S.W.2d 167, 170 (Mo. banc 1979); *State v. Hopkirk*, 84 Mo. 278 (1884). Inasmuch as the trial court implicitly found these statements voluntary, and such finding being substantially supported by the record, appellant's first contention is rejected.

Next, appellant maintains that the trial court erred in excusing a juror because of her answers to questions concerning her ability to impose the death penalty. The prosecuting attorney first inquired of the panel whether any of them would not be able to pronounce the death sentence, *regardless of the evidence*, because of religious, moral or conscientious scruples. In response, the juror stated that she did not think she could levy the death penalty under any circumstances. In a follow-up question, the prosecutor asked: "I'm understanding from you then that you could not impose the death penalty in any case, regardless of what the evidence was?" The juror replied: "That's right." When the defense asked whether the juror would automatically reject the death penalty or would think about it in extreme situations, the juror stated: "Well, I think I would think about it. But, I don't believe I could come to that decision."

 Appellant argues that these responses are equivocal, and therefore, the juror's removal from the panel was error in light of the U. S. Supreme Court's decision in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1967). As we read *Witherspoon* and our own cases construing it, unless a venireman unequivocally and unambiguously states that he cannot and could not impose the death penalty in any case, regardless of the facts, he may not be excused from the panel for his general feelings about the death penalty. *Id.* at 522, n. 21, 88 S.Ct. at 1777, n. 21; *State v. Pruitt*, 479 S.W.2d 785, 792 (Mo. banc 1972).

Implicit in the trial court's act of excusing the juror in this case is the finding that she could not levy the death penalty in any case and that this opposition was clearly and unequivocally expressed. The tenor of the voir dire examination contained in the record fully supports that finding. Further, we are fully aware that the trial court is in a far better position to measure and evaluate a venireman's demeanor, *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968), and that rulings on challenges for cause lie generally within the sound discretion of the trial court. *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. den.*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1977); *State v. Cuckovich*, 485 S.W.2d 16, 22 (Mo. banc 1972). We find no abuse of that discretion. Therefore, we find that the trial court did not err in excusing this juror.

Appellant contends that the bifurcated trial procedure mandated by statute violates his rights to a fair trial and due process in the following respects: (1) having a separate hearing on punishment alone imposes a heavier burden on defendants charged with capital murder than is imposed on those charged with other crimes; (2) having the punishment hearing immediately after the rendition of a verdict of guilty allows insufficient time to prepare arguments; (3) the list of mitigating circumstances contained in § 565.012, RSMo 1978, is too exclusive; and, (4) splitting the trial into two phases imposes an impermissibly heavy burden upon the jury.

We first note that bifurcated hearing procedures such as the one now challenged were developed in response to the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The legislatures of several states, including Missouri, developed the bifurcated hearing format to avoid the imposition of the death penalty in the arbitrary and capricious manner condemned in *Furman*. These efforts met with the approval of the Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); and, *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). The Missouri statutes that appellant now challenges[1] bear a strong resemblance to those challenged in *Gregg*,[2] *Jurek*,[3] and *Proffitt*.[4] Indeed, the list of mitigating circumstances contained in § 565.012 is virtually identical to that contained in the Florida statute.[5]

We note approval of this type of hearing procedure in the following language from *Gregg*:

> When a human life is at stake and when the jury must have information prejudicial to the question of guilt but relevant to the question of penalty in order to impose a rational sentence, a bifurcated system is more likely to ensure elimination of the constitutional deficiencies identified in *Furman*.

*Id.*, 153 U.S. at 191–92, 96 S.Ct. at 2933.

As we stated in *State ex rel. Westfall v. Mason*, 594 S.W.2d 908, 915 (Mo. banc 1980), rather than work a hardship on a defendant, the bifurcated system is "an extension of a high order of the process due the accused." In light of our own pronouncements on the Missouri system and its similarity to those approved by the U. S. Supreme Court, we find appellant's claim of denial of due process under that system absolutely meritless.

1. Sections 565.006, 565.008 and 565.012, RSMo 1978.

2. Ga.Code Ann., §§ 27–2503 (Supp.1975), 27–2534 (Supp.1975) and 27–2534.1(b) (Supp.1975).

3. Tex.Penal Code, § 19.03 (1974), Tex.Code Crim.Proc., Art. 37.071 (Supp.1975–1976).

4. Fla.Stat.Ann., §§ 782.04(1), 921.141 (Supp.1976–1977).

5. Fla.Stat.Ann., § 921.141(2)(b) and (c) (Supp.1976–1977).

Appellant's final point on appeal is that the trial court erred and abused its discretion in not excluding testimony relating to the contents of some of appellant's statements, the discovery of which had been sought under Rule 25.32, now Rule 25.05. Appellant's first counsel had filed a request for "any written or recorded statements and the substance of any oral statements made by the defendant." The parties agree that at least until a few days before trial the State had fully complied with appellant's request. However, on the Thursday or Friday before the commencement of the trial on the following Tuesday, the prosecuting attorney learned for the first time of two statements made to Deputy Jay Lucas that had not been disclosed. The statements were basically that appellant lay in wait behind the bank deciding how he would rob it and kill the teller; and that, when he did kill her he shot her once in the stomach and then twice in the head "so she wouldn't suffer." The prosecutor made no mention of the statements until he described Lucas' anticipated testimony in opening statement. This was the first knowledge defense counsel had of this specific facet of Lucas' testimony. Later that day, defense counsel objected to the introduction of the statements and sought to have them excluded under Rule 25.45, now Rule 25.16. The trial court inquired of defense counsel what prejudice appellant would suffer if the statements were admitted. She replied that she was deprived of the opportunity to fully prepare for trial; that the statements went directly to appellant's mental state in the killing and she would have directed different cross-examination questions to Lucas. The trial court then overruled appellant's motion to exclude the statements because there had not been a sufficient showing of prejudice.

The following morning, after hearing several of the State's witnesses, the trial court made a formal entry overruling appellant's request for exclusion. The court noted the wealth of other incriminating evidence; that Deputy Lucas was endorsed on the information and was at all times available to be interviewed; that defense counsel failed to interview Lucas; and, that defense counsel failed to show that the statements would have had any impact on the outcome of the trial. It is this ruling that appellant believes to be erroneous.

We first note that the State admits having no excuse for its failure to disclose the existence of the challenged statements since it had provided all other requested information.

The duty to disclose such information is not satisfied by one response, but is a continuing one. *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1980); *State v. Curtis*, 544 S.W.2d 580 (Mo. banc 1976). It is apparent that there was a failure to fully comply with the discovery rules. According to Rule 25.45, under which appellant proceeds, the trial court *may* impose the sanctions of forced disclosure, the grant of a continuance, the exclusion of the evidence, or any other order the trial court deems appropriate. A finding of non-compliance, however, does not end the inquiry. We must also determine whether or not the trial court abused its discretion in failing to impose a sanction therefor. It is beyond debate that the question of remedies lies within the sound discretion of the trial court. *State v. Carter*, 572 S.W.2d 430, 436 (Mo. banc 1978); *State v. Davis*, 556 S.W.2d 45 (Mo. banc 1977). It will be an abuse of that discretion to fail to impose a sanction only where the admittance of the evidence results in a fundamental unfairness to the defendant. *State v. Davis, supra; State v. Johnson*, 524 S.W.2d 97 (Mo. banc 1975); *State v. Couch*, 569 S.W.2d 789 (Mo.App. 1978); *State v. Moten*, 542 S.W.2d 317 (Mo. App.1976). The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial. *State v. Couch, supra*. It is by this standard that the statements must be examined.

Appellant argues that these statements were highly prejudicial as they clear-

ly reflected his deliberation and premeditation, and thus, were supportive of the capital murder charge. Further, he believes the statements were especially damaging in the punishment phase of the trial. On oral argument, appellant characterized the complaint as being one of degree, that the statements were damaging because they described the abduction and killing in more detail than his other statements. As the State points out, the transcript is replete with evidence fully consistent with the challenged statements. Indeed, the other evidence of guilt is overwhelming. Furthermore, it is not necessary for the State to produce *direct evidence* of a defendant's premeditation and deliberation. The rule that such mental elements may be proven by circumstantial evidence and inferences reasonably drawn from the circumstances surrounding the killing is well established.[6]

 In this case, appellant's statements, other than those related by Lucas, established that appellant lay in wait behind the bank for several days deciding how to complete the robbery. The jury could have inferred from this evidence that appellant also coolly considered doing those things necessary to make the robbery a success. Further, it is entirely plausible to believe that appellant killed Tara Lynn Creach to facilitate his escape and to eliminate a witness to the robbery. Such inferences have been held sufficient to support the conclusion that a defendant premeditated and deliberated. *State v. Cuckovich, supra; State v. Williams, supra.* Other of appellant's statements placed before the jury described the robbery. This description included his threats to kill the victim if she did not cooperate and ensure that he got the money. The jury was also informed otherwise about the events at Panhandler's Park,

where Tara Lynn Creach was murdered. Appellant's statements indicated that he directed her into a restroom in the park and followed her there shortly thereafter. He apparently told police officers that when he clicked the trigger on the gun he was carrying, she fell to the ground and he shot her twice in the back of the head. A post-mortem examination revealed that death occurred almost immediately after the head wounds were inflicted, as indicated by the virtual absence of cranial bleeding. The trajectory of the bullets followed a downward flight path. The victim also suffered an abdominal wound. The almost instantaneous death caused by the head wounds and the downward angle at which those wounds were inflicted compel the conclusion that Tara Lynn Creach sustained the abdominal wound first and was lying on the ground as a result thereof. In the pathologist's opinion, the abdominal wound itself would have proved fatal absent prompt medical attention, which would not be forthcoming in that remote backwoods area of Butler County. This situation would appear to be similar to that in *State v. Sturdivan*, 497 S.W.2d 139 (Mo.1973), wherein the victim was first manually strangled and then suffered the application of a towel to ensure death. In the case, the location and manner of infliction of the gunshot wounds are sufficient to support a finding that appellant both deliberated and premeditated. *State v. Page*, 130 S.W.2d 520 (Mo.1939); *State v. Kenyon*, 343 Mo. 1168, 126 S.W.2d 245 (1938).

The totality of the circumstances surrounding the murder, as mentioned in the foregoing discussion and as suggested by the evidence other than the two challenged statements, supports the trial court's finding.

 As previously mentioned, the trial court asked what defense counsel would

---

6. *State v. Lindsey*, 507 S.W.2d 1 (Mo. banc 1974); *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972); *State v. Williams*, 369 S.W.2d 408 (Mo. banc 1963); *State v. Goodwin*, 352 S.W.2d 614 (Mo. banc 1962); *State v. Johnson*, 362 Mo. 833, 245 S.W.2d 43 (Mo. banc 1952); *State v. Nelson*, 514 S.W.2d 581 (Mo.1974); *State v. Mitchell*, 408 S.W.2d 39 (Mo.1966); *State v. Page*, 130 S.W.2d 520 (Mo.1939); *State v. Kenyon*, 343 Mo. 1168, 126 S.W.2d 245 (1938); *State v. Cade*, 326 Mo. 1132, 34 S.W.2d 82 (1930); *State v. Walker*, 98 Mo. 95, 9 S.W. 646 (1888); *State v. Talbott*, 73 Mo. 347 (1881); *State v. Lane*, 64 Mo. 318 (1876).

have done differently had she been provided with the statements prior to trial. She replied that she would have prepared different questions and defense strategy. The trial court found these extremely general responses insufficient to show that appellant was prejudiced. It seems strange to hear defense counsel make these claims while not seeking a continuance, which was allowed under Rule 25.45, so that such "strategy" could have been developed. When asked about this inconsistency at oral argument, defense counsel stated that in her judgment the case had dragged on too long and she felt it best to proceed rather than delay the trial any further. This conclusion further disparages appellant's argument that the introduction of the statements resulted in a fundamental unfairness. For these reasons, we find no abuse of discretion in the trial court's decision not to impose sanctions for the State's failure to comply fully with the discovery rules.

Finding no merit in any of appellant's points of error, the conviction will be affirmed.

DONNELLY, RENDLEN, WELLIVER, and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

The final point in this appeal as stated in the principal opinion is "that the trial court erred and abused its discretion in not excluding testimony relating to the contents of some of appellant's statements, the discovery of which had been sought under Rule 25.32, now Rule 25.05." As demonstrated by the principal opinion, the state failed to comply with the defendant's request for discovery made pursuant to the rules of this Court with respect to certain statements attributable to the defendant. Those statements attributable to the defendant were that he, the defendant, lay in wait behind the bank deciding how he would rob it and how he would *kill the teller*, and in subsequently killing her he shot her once in the stomach and twice in the head "so she wouldn't suffer."

As mentioned in the principal opinion, the state admits having no excuse for its failure to disclose the existence of the challenged statements attributable to the defendant and points out that the duty to disclose is a continuing one.

The principal opinion, in resolving this point, demonstrates that there was evidence, other than these statements, upon which a jury could find the defendant guilty of capital murder. I agree that there was substantial evidence from which the jury could find the elements submitted as part of the capital-murder instruction. Nevertheless, it is a rare case where the prosecution has direct evidence that the defendant "intended to take the life of a particular person" and that the defendant considered taking the life of that person and reflected upon it fully and coolly before doing so. The statements attributable to the defendant and which were not disclosed by the state constituted direct evidence of these two elements, the last of which is peculiar to capital murder.

It is not, in my opinion, a sufficient answer to this point to simply determine that the jury could have found the defendant guilty of capital murder without the disputed evidence. The disputed evidence in this case was just about as powerful as any evidence could be upon the element of deliberation which is a required element of capital murder but not of first-degree murder (felony murder) nor second-degree murder. It is virtually impossible for an attorney during the course of a trial, when confronted with this type of evidence, to immediately and spontaneously demonstrate the manner in which his client would be prejudiced if the disputed evidence is introduced.

Obviously, the state thought it was important evidence, as do I. The defendant's attorney, had he known of this evidence before hand, could have deposed the person to whom the statements were allegedly made and found out more about the situation before being confronted with it at trial.

The prejudice in this case is deprivation of the defendant of the opportunity to adequately prepare for trial, which deprivation was directly caused by the state's inexcusable violation of this Court's discovery rules and violation of the continuing duty to make discovery.

Whether or not the jury would have found the defendant guilty of *capital murder* absence this particular evidence is, in my opinion, highly problematical. I agree that it is highly probable that the defendant would have been convicted of first-degree (felony) murder as having committed a homicide during the course of the underlying felony. That offense does not require the deliberation with respect to taking the life of another person nor, *afortiori*, does it necessarily require an intent to kill. The evidence that the defendant lay in wait and reflected upon killing the teller before doing so is not cumulative to other similar or other powerful evidence in this case.

The court should have excluded this evidence or offered the defendant a mistrial so as to permit discovery to take place and the trial to begin anew or, if feasible, to have recessed long enough to have allowed the deposition of the person who heard the statements made to be taken. In my opinion, this Court ought not to persist in excusing direct violations of discovery in criminal cases. To do so continuously permits precisely that which the discovery rules were designed to eliminate, surprises at trial.

For the foregoing reasons I dissent and believe the case should be reversed and remanded for a new trial.