**STATE of Missouri, Respondent,**

v.

**McKinley ROBINSON, Appellant.**

No. 40931.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 26, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 1980.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

John T. McCaffrey, St. Louis, for appellant.

REINHARD, Judge.

Defendant appeals from a judgment of conviction following a jury verdict of guilty of the offense of murder first degree. The court sentenced him to serve a term of life imprisonment in the Department of Corrections.

Since defendant does not challenge the sufficiency of the evidence, a brief summary of the facts concerning the murder will suffice. Other facts are discussed in relation to defendant's points on appeal.

On December 29, 1976, Lawrence Hunter was alone in his apartment located at 3936 Cook in the City of St. Louis. At approximately 2:30 p. m. he heard someone knocking at his front door and went to open it. Hunter opened the door and the defendant, whom Hunter knew, and two companions entered his apartment. The defendant pulled a pistol, pointed it at Hunter and ordered him back into the apartment. Hunter was forced to lie down on a bed. His hands and feet were tied and his mouth gagged by a sock being stuffed into his mouth. Hunter was then covered by a blanket. While lying on the bed, Hunter heard someone knock at the back door. The defendant and his companions ordered the person to enter the apartment and lie down on the floor. Hunter heard a brief struggle and then three shots, after which the defendant and his cohorts fled departing through the front door of the apartment. About 5 or 10 minutes later, Hunter freed one of his legs and went to a neighbor's apartment where the remaining bonds were cut.

Apparently, another person living in the building called the police and Officer Willie Percy was dispatched to the site. Officer Percy discovered the victim, Willie Summerville, on Hunter's back porch. Summerville was subsequently conveyed to Homer Phillips Hospital where he was pronounced dead on arrival.

Two days later, the defendant was arrested by Officer James Lawrence of the St. Louis police. The arrest was made in Illinois after Officer Lawrence pursued defendant through part of downtown St. Louis and over the Martin Luther King Bridge into Illinois. Without formal extradition, defendant was brought back to Missouri to stand trial.

■ On appeal, defendant first argues that the court erred when it denied his motion to strike for cause, venireman, Ralph R. Walton, who had served for thirty years as a police officer before retirement in 1963.[1] Prior affiliation with law enforcement, is not, standing alone, a sufficient ground for a challenge for cause. *State v. Wraggs*, 512 S.W.2d 257, 258 (Mo.App.1974). This court has specifically held that a retired police officer is not necessarily incompetent to serve as a juror in a criminal case. *State v. Russ*, 574 S.W.2d 5, 7 (Mo. App.1978). Here, venireman Walton indicated that he would give no greater weight to the testimony of a police officer and positively indicated that he could give both the state and the defendant a fair trial. The trial court has broad discretion in determining the qualifications of prospective jurors and its decision will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). We find no abuse of discretion in this case and therefore rule this point against the defendant.

■ Defendant next challenges the trial court's ruling denying his motion to suppress as evidence, a .32 caliber pistol which was seized from his person at the time of his arrest in Illinois. He argues "that since no legal extradition proceedings were ever had, any evidence seized is tainted by that illegality and therefore is not admissible."

The record reveals that the pistol was seized by Officer Lawrence after he saw it protruding out of defendant's right rear pocket. We believe the pistol was admissible either as evidence discovered pursuant to a search incident to arrest or as evidence discovered in plain view. See *State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978), *cert. denied* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). The fact that defendant may not have been properly extradited

---

1. Although not in the record defendant in his brief indicates that the prospective juror Walton was one of the jurors on a list for selection as an alternate juror and it appears that he was not selected as an alternate juror.

from Illinois has no bearing on the admissibility of the pistol as evidence at his trial. "Once the accused has been brought within the custody of the demanding state, the legality of the extradition is no longer a proper subject of any legal attack by him." *Johnson v. Buie*, 312 F.Supp. 1349, 1351 (W.D.Mo.1970).

Defendant next contends the court erred in admitting into evidence a bullet (Exhibit 16) removed from the body of the victim because the state failed to establish a proper chain of custody. In response the state argues that the exhibit was positively identified at trial and, as such, proof of chain of custody was unnecessary.

The doctor in the Coroner's office who performed the autopsy testified that he removed a bullet from the victim's body. He placed it in a box and signed the reverse end of the box by writing: "Removed by W. W. Kaminsky." Kaminsky gave the slug to personnel at the morgue who placed it in safekeeping until some employee of the police laboratory picked it up. At trial Kaminsky positively identified State's Exhibit No. 16 as the box in which he placed the slug.

Paul Reeder, a ballistics expert for the St. Louis Police Department, performed a ballistics test on a bullet fired from the weapon taken from defendant when he was arrested and compared it with the bullet in the box marked as State's Exhibit No. 16. It was his opinion that they were fired from the same weapon, State's Exhibit No. 2 which was the gun seized from defendant at the time of his arrest. When the State requested that State's Exhibit No. 16 be admitted into evidence, defendant objected claiming failure to establish proper chain of custody. The trial court overruled the objection and admitted the exhibit into evidence.

■ The purpose of the chain of custody requirement is to prevent alteration or tam-

pering with, or substitution of, an exhibit. The state is not required to exclude every possibility of alteration or tampering, nor need it show that some credible witness retained the exhibit in his personal possession under constant watch. All that is required to establish a chain of custody is that the evidence afford a reasonable assurance that the exhibit was in the same condition at trial as when first obtained. *State v. Burnett*, 538 S.W.2d 950, 952 (Mo.App.1976).

■ All of the testimony relative to the bullet, State's Exhibit No. 16, came in without objection. Defendant made no motion to strike the ballistics expert's testimony in reference to the bullet. Since all of this testimony was already before the jury prior to the state's request to admit Exhibit No. 16 into evidence, we cannot discern any prejudice to the defendant from the admission of the bullet.

As his last point, defendant contends that the trial court erred when it refused to grant his motion for a mistrial after it had learned that some members of the sequestered jury had made unauthorized phone calls. Defendant argues that the communication constituted misconduct on the part of the jury and that the state failed to meet its burden of proof in showing that defendant had not been prejudiced.

Prior to the submission of the case to the jury, the trial court was informed that some of the jurors had received or made unauthorized telephone calls. One juror, who received a phone call, was excused after he learned that his wife had been hospitalized and an alternate was substituted in his place. At the request of the state and without objection by defendant, the court posed a series of four questions[2] to each juror to learn exactly how many of them had made unauthorized phone calls. Ten of the twelve jurors on the panel indicated that they had made phone calls, but each stated that he had not received any infor-

---

2. Questions Record:
 1) Did you make a phone call while sequestered?
 2) If so, did you discuss this case with the other party or parties on the line?
 3) Did you receive any information regarding the defendant, McKinley Robinson?
 4) Did you receive any information of any kind regarding this case?

mation regarding the defendant or the case.[3]

 It is well-settled that sequestered jurors should not be allowed to use the telephone during the trial of a criminal case except by direction or under the supervision of the court. *State v. Bayless*, 362 Mo. 109, 240 S.W.2d 114, 124 (1951), *cert. denied* 352 U.S. 852, 77 S.Ct. 74, 1 L.Ed.2d 62 (1956). However, not every case of juror misconduct requires a reversal. The receipt by a juror of possibly prejudicial information during the trial of a criminal case requires a reversal unless the state affirmatively shows that the juror was not subject to improper influence. On appeal, we must decide whether the incident resulted in prejudice to the defendant such that as a matter of law, the court abused its discretion in refusing to grant a mistrial. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970).

 Although the questions to the jury were asked by the court, the questions were suggested by the state and in this posture we cannot say that the state failed in its burden. The trial court could properly consider the testimony of the jurors in determining any prejudice to the defendant because of the unauthorized calls. The matter of granting a mistrial or a new trial for alleged misconduct of a jury being largely within the discretion of the trial court, we find no abuse here.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

---

**3.** Since the court posed its questions to the jury prior to submitting the case to them, we are not confronted with the issue of jurors impeaching their verdict.