STATE of Missouri,
Plaintiff-Respondent,

v.

Ricky Alonzo EVANS,
Defendant-Appellant.

No. 48917.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 12, 1985.

Motion for Rehearing and/or Transfer
Denied Dec. 17, 1985.

Application to Transfer Denied
Jan. 15, 1986.

Michael Radosevich, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

DOWD, Presiding Judge.

Defendant Ricky Alonzo Evans appeals his jury conviction of sodomy, § 566.060 RSMo Cum.Supp.1984; burglary in the first degree, § 569.160 RSMo 1978; and armed criminal action, § 571.015.1, RSMo 1978. Defendant was charged as a persistent sexual offender and sentenced to terms of imprisonment of thirty (30) years on the sodomy conviction, ten (10) years on the burglary conviction, and three (3) years on the armed criminal action conviction, said sentences to run consecutively. This appeal followed.

At approximately 7:30 p.m. on November 26, 1983, the defendant entered R.L.'s (hereinafter victim) apartment through her front door. The victim, a 19 year old unmarried woman, testified that her door had been left ajar on this particular evening so that she could answer her friend's phone, who lived next door. Once the defendant was in the victim's apartment he held a knife to her throat and told her that he was going to rob her. The victim was instructed by the defendant to lock the apartment door and to turn off the lights, except for the Christmas tree lights.

At the defendant's instruction, the victim went to the bedroom and disrobed. The defendant held a knife to the victim's throat as the two proceeded back to the

living room to sit on the couch. The victim tried unsuccessfully to pull an afghan over her body while on the couch. The defendant ordered the victim back to the bedroom to clothe herself. Instead of putting her clothes on, the victim put a robe on. The victim testified that she put a robe on instead of her clothes because she wanted to get out of the bedroom as soon as possible. The defendant tied the victim's hands behind her back with the belt from the robe. The defendant told the victim that he had to hurt her, as her boyfriend had hurt his sister. He asked the victim whether he should rape or kill her. The victim told the defendant she would rather be dead than raped. The defendant led the victim back to the living room with a knife held to her throat.

The defendant continued to hold a knife to her throat as the two sat on the couch in the living room. The defendant said, "Maybe I should just go ahead and kill you." The victim said, "No please don't." The defendant said, "Well maybe I should go ahead and rape you." The victim pleaded with the defendant that he not rape her. The defendant then gave the victim a choice, either to be raped or sodomized. The victim chose sodomy because she feared pregnancy. The defendant put the blade of the knife to the back of the victim's neck and forced the victim to sodomize him orally. The defendant released the victim, apologized several times, and then hugged the victim. The victim testified that she felt some kind of covering on the defendant's head when he hugged her, which could have been a sock cap or hood.

Other relevant evidence received as part of the state's case in-chief, was as follows. Two witnesses, who live in the victim's apartment complex, testified that a black man of the defendant's build and stature knocked on their door, on the evening of November 26, 1983, between 6:55 p.m. and 7:15 p.m. One of the witnesses testified that the man held a sock cap in his hand. This witness had identified the defendant from a photo lineup shown to him by the police as the man who knocked on his door. The victim's boyfriend testified that he found a piece of paper on the couch shortly after the incident. The paper had the name of "Tim Johnston" and a phone number on it. Tim Johnston testified that the defendant had talked to him previously about purchasing a truck Johnston had for sale. Mr. Warren, an analytical chemist, testified that dog hairs similar to the hairs found on the victim's couch, were found on defendant's clothes.

Police searched the defendant's apartment after his arrest and found clothes fitting the description given by the victim. Additionally, the police found a knife, sock cap, and gloves in the defendant's apartment.

After defendant was arrested he made two statements to the attending officers regarding the incident. Prior to making either statement the police officer testified that the defendant had been read his Miranda rights, and had signed a form stating that he understood his rights. Defendant refused to sign a form waiving his rights but indicated a desire to talk. The attending officers stated that the defendant did not appear to be under the influence of alcohol or drugs. The officers indicated that the defendant did not request an attorney or indicate an unwillingness to talk. In his first statement, defendant told the officers: "I'm sorry, I'm so sorry ... I didn't mean to hurt her." Defendant's second statement was written and admitted most of the details of the crime.

Defendant raises numerous points on appeal. In four constitutional challenges to the composition of the jury, defendant asserts that the trial court erred in its denial of defendant's motion to strike for cause: (1) panelist Shepard because of her expertise regarding matters introduced into evidence by the state and because of her strong personal feelings about sexual assault; (2) panelist Welker because of her association with Timothy Johnston, the state's witness; (3) the entire jury panel because comments made by a panelist served to prejudice the entire panel; and (4) the entire panel because of its racial com-

position. Defendant also claims the trial court erred in: (5) denying defendant's motion to suppress inculpatory statements made by defendant to the police; (6) entering the judgment of conviction against the defendant because the information used to charge the defendant failed to charge the defendant with an offense; (7) refusing to allow defendant's counsel to ask questions concerning the burden of proof or the presumption of innocence during voir dire; and (8) denying defendant's motion of acquittal on the grounds that there was insufficient evidence to sustain the conviction of sodomy. For the reasons discussed below, we affirm.

Defendant raises several issues regarding the jury selection process. The law regarding juror selection is well established. A defendant in a criminal case is entitled to a full panel of qualified jurors before he is required to make his preemptory challenges. The trial court has wide discretion in determining the qualifications of veniremen and its ruling on a challenge for cause will not be disturbed in the absence of a clear abuse of discretion. The trial judge is in a far better position to make a determination as to the qualifications of a potential juror than the appellate court; as his determination necessarily involves a judgment of the demeanor of the venireman, as well as what he says. For this reason, any doubt as to the propriety of the trial judge's ruling should be resolved in his favor. *State v. Daniels,* 629 S.W.2d 627, 630 (Mo.App.1982). The trial court has a duty to evaluate closely, and at times independently examine the qualifications of potential jurors. Without such independent review by the trial court, a more searching review by the appellate court is justified. The trial court's determination, however, will be rejected only upon a clear showing of abuse of discretion by the trial court. *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984).

Defendant's first challenge is the trial court's refusal to strike panelist Shepard for cause arguing that panelist Shepard's training in hair analysis and her strong personal feelings about sexual assault rep-resented potential prejudice and bias against the defendant. As a result of the court's failure to strike panelist Shepard, defendant argues that his right to a full panel of qualified jurors prior to making peremptory challenges was violated. In judging the qualifications of an individual juror the trial court makes its determination based upon the whole examination of the juror. *State v. Garrett,* 627 S.W.2d 635, 642 (Mo. banc 1982), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). To show an abuse of discretion, the bare possibility of prejudice is not enough; instead, it must clearly appear from the evidence that the challenged venire person was in fact prejudiced. *State v. Cheesebrew,* 575 S.W.2d 218, 221 (Mo.App.1978).

▮ During voir dire it was revealed that panelist Shepard had been instructed in hair and textile analysis in a home economics class. Panelist Shepard was asked whether her previous instruction in hair analysis would interfere with her ability to listen to Mr. Warren's testimony; Shepard responded, "No." Missouri courts have held that a jurors former affiliation with law enforcement was not sufficient grounds to challenge for cause. *State v. Robinson,* 595 S.W.2d 9, 11 (Mo.App.1979). In the case before us, panelist Shepard's single course in hair and textile analysis is insufficient to strike her for cause.

During voir dire panelist Shepard expressed her feelings about sexual assault. The following is from the voir dire examination of panelist Shepard:

MR. ROBBINS: Putting aside the situation regarding race for a minute, is there anybody that feels uncomfortable sitting in this case just because we have—Mr. Duckworth, Mrs. Proffer, I understand that—a sexual connotation case where we are going to be discussing something rather private or personal? Is there anybody that feels they could not sit here and be fair in this case, hearing evidence one way or the other regarding the issue of sodomy? Think hard. By your si-

lence, there is nobody that feels they could not be fair because of that?

PANELIST JANET SHEPARD: I find it difficult with a woman. It will be difficult to hear some of these things. I don't know that that will affect my objectivity, but I have some very strong feelings about sexual assault, I think simply because I am a woman.

MR. ROBBINS: Because of the fact that you are a woman, and because we are going to have a women who is going to be sitting here today saying things, do you think that you would treat her in some sort of sense that you are more likely to believe her just because of the fact that she is a woman in this courtroom and you are a woman also? In other words, will your empathy with her be such that you maybe could not be a fair juror in this case?

PANELIST SHEPARD: I don't think so.

MR. ROBBINS: You don't think so you could or could not be fair?

PANELIST SHEPARD: I definitely will be empathetic with her. I don't think that will affect my judgment of whether the defendant is guilty or not.

The trial judge did not undertake an independent examination of panelist Shepard.

■ Defendant argues that panelist Shepard's comments demonstrated bias and prejudice against the defendant. We do not find Shepard's statements demonstrated bias or prejudice against the defendant. Our review of the transcript indicates that Shepard's comments represented her feelings against the crime of sexual assault and empathy for the victim of sexual assault.

Sympathy toward a victim is not bias. *State v. Pride,* 567 S.W.2d 426, 433 (Mo. App.1978). We note that empathy is often used a a synonym for sympathy. Webster's Third New International Dictionary 2317 (4th ed. 1976). In *Pride,* a prospective juror stated that he might be a little more sympathetic toward a truck driver, since he was a truck driver. The court in *Pride* held that such a statement did not indicate bias or prejudice any more than an answer

that a prospective juror tended to be sympathetic toward a victim. Sympathy becomes bias only when that sympathy prevents the juror from fairly deciding the case under the evidence and the law. *Id.* at 433.

We find it necessary to discuss a recent case raising a similar issue. In *State v. Hopkins,* 687 S.W.2d 188 (Mo.1985), a capital murder prosecution case, a prospective juror struggled with his ability to be an impartial juror because his son, a police officer, was killed in the line of duty. The transcript revealed the panelist was very emotional about the death of his son. The panelist stated that his feelings about his son's death might interfere with his ability to render a fair and impartial verdict. Although the juror indicated he hoped and wanted to be impartial, the thoughts of his son's death were quite upsetting to him. At one point the juror stated that "somebody should have paid a little bit" for the death of his son. The Supreme Court held that judicial discretion required the challenge for cause be sustained and the juror removed. *Id.* at 199.

Panelist Shepard's responses demonstrated her feelings against the crime of sexual assault and empathy toward the victim of a sexual assault. When Shepard was asked whether she could be fair, Shepard responded, "I definitely will be empathetic with her. I don't think that will affect my judgment of whether the defendant is guilty or not." We find this answer to be unequivocal. As the court in *Pride* noted, because people do not speak in absolutes, that court held that the common vernacular, "I don't think so," is not an equivocation. *Pride* at 433. We find that the holding in *Hopkins* is not applicable to this case. Shepard's feelings against the crime of sexual assault and her empathy toward the victim of a sexual assault did not rise to a level which prevented her from fairly deciding the case.

■ Finally, defendant argues that Shepard's responses created a duty on the trial judge to independently examine Shepard

concerning her ability to be a fair and impartial juror. We find that panelist Shepard's responses did not indicate bias, prejudice, or an inability to give the defendant a fair trial. A trial court has no duty to question further a prospective juror when the answers given by the juror show no bias and where the prospective juror's pledge to give the defendant a fair trial is unequivocal. *State v. Crews*, 607 S.W.2d 759, 761 (Mo.App.1980). Panelist Shepard's responses created no duty to undertake an independent examination by the trial court judge.

In light of the transcript and with due regard to the trial court's opportunity to view the panelist and hear her testimony, we believe that the trial court could properly conclude that panelist Shepard would be a fair and impartial juror. We find no abuse of discretion by the trial court in its denial of defendant's motion to strike panelist Shepard for cause. Defendant's first point is denied.

■ Defendant's second point on appeal is the trial court's denial of defendant's motion to strike panelist Welker for cause. Defendant argues that panelist Welker's association with the state's witness, Tim Johnston, and her statement that she believed Tim Johnston would be telling the truth indicated bias in favor of the state's case.

The voir dire examination revealed that panelist Welker and the state's witness, Tim Johnston, were employed by the same company. The following exchange occurred during voir dire:

PANELIST VIRGINIA WELKER: Is this the Tim Johnston that's the foreman at Lee-Rowan?

MR. FERRELL: Yes, Ma'am.

PANELIST WELKER: Well, he's the one I'm substituting for this week on the midnight shift.

MR. FERRELL: Okay,, Mrs. Welker, would you hold that against Mr. Johnston here today?

(Laughter.)

PANELIST WELKER: I really and truly believe he would tell the truth, you know.

MR. FERRELL: Do you feel that you would have difficulty in listening to his testimony and judging him the same way as all the other witnesses?

PANELIST WELKER: I wouldn't think so. I have never been with him on anything like this. You know, as far as work, I'm just taking his place.

In *State v. Harrell*, 637 S.W.2d 752, 756 (Mo.App.1982) a venireman initially expressed a tendency to believe a police officer over other witnesses, but on further questioning indicated an ability to evaluate all the testimony. The trial court in *Harrell* did not abuse its discretion in not striking the venireman for cause. *Id.* In *State v. Crews* at 761, our court held that a venireman who knew two of the state's prospective witnesses and who stated that she could give the defendant a fair trial was not biased. There is ample support in this record for the trial court's finding that venireman Welker could be a fair and impartial juror. We find no disqualifying bias in panelist Welker's statements. Defendant's second point is denied.

■ Defendant's third point on appeal is the trial court's denial of his motion to strike the entire jury panel. Defendant contends that the answers given by panelist Caid prejudiced the entire panel.

The transcript reveals that panelist Caid was a very close acquaintance of the state's witness, Tim Johnston. During voir dire panelist Caid stated that Johnston was a long time family friend, belonged to the same church as Caid's family, and was employed by the same company. Panelist Caid stated that she would believe Tim Johnston's testimony. Panelist Caid was removed from the jury panel on a challenge for cause.

The determination whether remarks made by venireman or others during the examination of the panel are prejudicial so as to require dismissal of the panel is within the discretion of the trial court. The trial court is in a superior position to evaluate the effects of such remarks and a deci-

sion to refuse to quash a panel will not be disturbed unless there is a showing of an abuse of the court's discretion. *State v. Wilson*, 615 S.W.2d 571, 574 (Mo.App. 1981). *State v. Taylor*, 324 S.W.2d 643 (Mo.1959). Disqualification of an individual juror for bias and prejudice by expression of an opinion is not sufficient grounds to challenge an entire panel. *State v. Weidlich*, 269 S.W.2d 69, 71 (Mo.1954). If a defendant contends that a remark by a juror is so prejudicial as to require dismissal of the entire panel, the issue to be resolved is whether the juror's remarks were in fact so prejudicial to infect the entire panel to the prejudice of the defendant. *State v. McKinney*, 630 S.W.2d 96, 99 (Mo.App.1981).

In the present case, panelist Caid's statement that she would believe Tim Johnston was not so inflammatory and prejudicial that the entire jury was infected. We find no abuse of discretion by the trial court in its denial of defendant's motion to strike the entire jury panel. Defendant's third point is denied.

■ Defendant's fourth point of error is the trial court's denial of defendant's motion to strike the entire jury panel. Defendant contends that he was denied a fair cross-section of the community as a jury panel because there no blacks present on the panel.

A challenge that a defendant was denied a fair cross-section of the community as a jury requires the defendant to show that: (1) the underrepresented or excluded group is a distinctive group in the community; (2) the representation of this group in jury venires as a whole is not reasonable in relation to the number of such persons in the community; and (3) the under-representation is due to a systematic exclusion of the group in the jury selection process. *State v. Blair*, 638 S.W.2d 739, 753 (Mo. banc 1982). Systematic exclusion of blacks is not established simply because there are no blacks on the jury. *State v. Blevins*, 581 S.W.2d 449, 453 (Mo.App.1979).

During voir dire, a prospective juror asked trial counsel why there were no blacks on the jury panel. The trial judge intervened and explained the jury panel selection process used in Cape Girardeau County. The judge stated that the venire panel is selected by a computer using the voter registration list. The computer, at random, selects four thousand names without regard to race or sex. The judge further stated that he was unaware of anything which takes place as far as picking or excluding blacks from the jury panels. Defendant has failed to show systematic exclusion of blacks from jury panels in Cape Girardeau County. Defendant's fourth point is denied.

Defendant's fifth point on appeal is the trial court's denial of defendant's motion to suppress inculpatory statements made by the defendant to the police officers following his arrest. Defendant contends that the statements made to the police officers were not the product of a knowing, voluntary, or intelligent waiver of his constitutional rights.

A hearing on the motion to suppress statements made by the defendant was held prior to the trial. The trial court heard the following evidence at the hearing. The defendant was arrested at approximately 3:00 a.m. on the morning following the incident. Officers Sullenger and Abernathy testified that the defendant was advised of his Miranda rights. The defendant signed a form that he understood his rights. The defendant refused to sign the waiver of rights form, but indicated a willingness to talk about the incident. In the presence of Officers Sullenger, Sanders, and Abernathy the defendant made inculpatory statements about the incident. A second interrogation was held at 4:30 p.m. that afternoon. Officers Sullenger and Abernathy testified that defendant was read his Miranda rights and signed a form that he had been advised of his rights. Again, defendant refused to sign the waiver of rights form but said he would be willing to talk about the incident. After talking about the incident to Officers Sullenger and Abernathy, the defendant made a written statement admitting the details

of the incident. Officer Abernathy testified that the defendant did not appear to be under the influence of alcohol or drugs. At the conclusion of the hearing, the trial court found the statements made by the defendant, both written and oral, were freely and voluntarily made with an awareness of his rights.

A waiver of Miranda rights need not be an express declaration. The question of waiver must be determined on the particular facts and circumstances surrounding the case. A waiver can be inferred from the actions and words of the person interrogated. *State v. Urhahn,* 621 S.W.2d 928, 931 (Mo.App.1981). In *State v. Hull,* 595 S.W.2d 49, 51 (Mo.App.1980), the defendant was advised of his rights and refused to sign the waiver, but did elect to make an oral statement. The court held that "a refusal to sign a written declaration does not necessarily preclude an oral or an implied waiver." *Id.* 51.

In support of his contention, the defendant argues that he had been under the influence of alcohol and marijuana at the time he was interviewed. Intoxication does not render a statement involuntary unless it rises to the level of mania. *State v. Lindsey,* 630 S.W.2d 191, 193 (Mo.App. 1982). There is no evidence in the record that the defendant was intoxicated or under the influence of drugs at the time of the interview.

Defendant also argues that he was coerced into making a statement. We find no support for this argument in our review of the record.

■ Our review of the record indicates that defendant voluntarily waived his right to silence. Defendant had been read his rights and signed a form to that effect prior to making either statement. We find no coercion or impaired mental state existing at the time the defendant made the inculpatory statements. The defendant knowingly and voluntarily waived his right

to silence by talking with the officers present. We find no error in the trial court's denial of defendant's motion to suppress oral and written statements made by defendant while in police custody. Defendant's fifth point is denied.

Defendant's sixth point on appeal is the sufficiency of the information used to charge the defendant. Defendant argues that the information was defective because it failed to inform the defendant of the offense which he stood charged. Specifically, the defendant argues that the information failed to state plainly and concisely the essential facts constituting the crime of sodomy.

An allegation that an information fails to charge a crime is jurisdictional and may be raised for the first time on appeal. *State v. Tierney,* 584 S.W.2d 618, 621 (Mo.App. 1979); *Stte v. Johnson,* 548 S.W.2d 245, 248 (Mo.App.1977).

■ In Missouri the test for the sufficiency of an information is whether it states the essential elements of the offense charged so that defendant is adequately informed of the charge against him and the formal disposition of the charge will constitute a bar to further prosecution for the same offense. *State v. Mitchell,* 611 S.W.2d 223, 225 (Mo.1981); *State v. Downs,* 593 S.W.2d 535, 540 (Mo.1980). Sodomy is of a vile and degrading nature, and for that reason, the strict rules of pleading have not been followed in charging the crime. As long as the act of sodomy charged falls within the statutory definition and the indictment informs the accused of the charge against him, the details of the commission are generally unnecessary. *State v. Dayton,* 535 S.W.2d 469, 479 (Mo.App.1976). The Missouri Supreme Court has held that statute defining sodomy "conveys to a person of common intelligence and understanding an adequate description of the act proscribed." *State v. Collins,* 587 S.W.2d 303, 306 (Mo.App.1979).[1]

---

1. 566.060 RSMo Cum.Supp.1984
   Sodomy
   1. A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

■ The information used to charge the defendant followed the pattern form MACH–CR 20.08 for an information charging sodomy and reads as follows:

The Prosecuting Attorney of the County of Cape Girardeau, State of Missouri, charges that the defendant, either acting alone or knowingly in concert with another in violation of Section 566.060, RSMo, committed the felony of forcible sodomy, punishable upon conviction under Section 566.060.2, RSMo., in that on or about the 26th day of November, 1983, in the County of Cape Girardeau, State of Missouri, the defendant had deviate sexual intercourse with R.L. to whom defendant was not married, without consent of R.L. by the use of forcible compulsion.

The information used to charge the defendant referred to the statute section proscribing the conduct charged, the statute section setting forth the punishment for the offense charged, the name of the victim, the date and place of the incident. Additionally, the information used the language of the statute, "deviate sexual intercourse," to define the act with which the defendant was charged.

We find that the information used to charge the defendant was not vague or uncertain. The defendant was fully apprised in unmistakeable language of the crime for which he stood charged. Defendant's sixth point on appeal is denied.

■ Defendant's seventh point on appeal alleges the trial court erred in refusing to allow defendant to ask any questions during voir dire concerning the burden of proof the state bears in a criminal prosecution or the presumption of innocence. As a result, defendant argues that he was unable to ascertain any bias either expressed or implied, that a juror might have had against the defendant.

In the case before us the record reveals that the trial court instructed the jury regarding the law to be applied in the case. The judge specifically instructed the jury regarding the presumption of innocence, burden of proof and reasonable doubt. The jury panel acknowledged that it could follow these instructions. The trial judge then instructed both the prosecuting attorney and the defense attorney that they were barred from questioning the jury regarding the presumption of innocence, burden of proof, and reasonable doubt during voir dire. The defense attorney's objection to the court's ruling was overruled.

In Missouri, a trial court has considerable discretion in the control of the voir dire examination. The appellate court will interfere only when the record shows an abuse of discretion. *State v. Williams,* 558 S.W.2d 671, 674 (Mo.App.1977); *State v. Mudgett,* 531 S.W.2d 275, 279 (Mo. banc 1975). The precise point here was resolved in *Williams.* The trial judge in *Williams* had previously advised the jurors concerning the presumption of innocence, burden of proof, and reasonable doubt and had inquired if any member of the jury panel would be unable to follow his instruction; he received a negative response. The appellate court held that it was not an abuse of discretion by the trial court to refuse to allow counsel to cover the same ground a second time. *Id.* In the case before us, there was no abuse of discretion by the trial court in refusing to allow counsel to repeat the court's questions pertaining to burden proof and presumption of innocence. Defendant's point is denied.

2. Forcible sodomy or an attempt to commit forcible sodomy as described in subsection 1 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to deviate sexual intercourse or sexual intercourse with more than one person, in which cases forcible sodomy or an *attempt to commit* forcible sodomy is a class A felony.

Defendant contends in his final point on appeal that the trial court erred in denying his motion for acquittal made at the close of the state's case because there was insufficient evidence to sustain the conviction of sodomy. Specifically, defendant argues that the state failed to prove lack of consent and forcible compulsion; necessary elements to support a conviction of sodomy.

In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in the light most favorable to the state and all adverse inferences and evidence disregarded. Review is limited to whether the evidence is submissible and whether there is sufficient evidence from which reasonable individuals could conclude that defendant is guilty. *State v. Mason*, 657 S.W.2d 40, 43 (Mo.App.1983). The testimony of a victim is sufficient to sustain a sodomy conviction without other corroboration unless that testimony is so contradictory or in conflict with the physical facts, surrounding circumstances and common experience to be unconvincing. *State v. Sipes*, 651 S.W.2d 659, 662 (Mo.App.1983).

We find the testimony given by the victim was clear and convincing, not inherently contradictory. The testimony of the victim provided a plausible account of the events which occurred on the evening of November 26, 1983. Although not necessary, her testimony was corroborated by other testimony and physical evidence produced at trial.

It is clear from the evidence in this case, that the testimony of the victim, standing alone, made a submissible case. After a careful examination of the record, we conclude that there was substantial evidence to deny defendant's motion for acquittal and to support the jury's verdict of guilty on the sodomy charge. Defendant's final point is denied.

The trial court's judgment is affirmed.

REINHARD and CRIST, JJ., concur.